Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8334 | **DATE** | 8/25/2000 |
| **CASE TITLE** | Christakos vs. Intercounty Title Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Motion to certify class is granted and the motion to dismiss is denied. Enter memorandum opinion

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 2 8 2000 date docketed | 37 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING 00 AUG 28 PM 2:32 | docketing deputy initials 8/25/2000 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTIGONE CHRISTAKOS, )
 )
 Plaintiff )
 )   No. 99 C 8334
v. )
 )
INTERCOUNTY TITLE COMPANY, )
 )
 Defendants. )

## MEMORANDUM OPINION AND ORDER

Ms. Antigone Christakos filed a class action against Intercounty Title Company of Illinois ("Intercounty"), alleging that, in connection with its role in the refinancing of her home, Intercounty violated the Real Estate Settlement Procedures Act, 12 U.S.C. 2607 ("RESPA"), and the Illinois Consumer Fraud Act, 805 ILCS 505/2, *et seq.* ("ICFA") by charging her a recording fee that was actually performed by someone else. Ms. Christakos has moved to certify the class, and I grant the motion. Intercounty has filed a motion to dismiss, which I deny.

### I. Background

Like many Americans, Ms. Christakos refinanced her home mortgage in late 1998. She sought a new loan from New America Financial, Inc. ("New America"), and Intercounty was retained to

perform the settlement services associated with the refinancing transaction and to provide a lender's title insurance policy to New America. Intercounty's role as settlement agent was to receive and disburse the proceeds of Ms. Christakos' loan from New America. In a refinancing transaction, the new lender must ensure that the mortgage held by the old lender -- in this case Mellon Mortgage Company ("Mellon"), is properly paid off so that the new lender's mortgage will have priority.

As requested, Mellon issued a "Payoff Statement" to Ms. Christakos on November 11, 1998 which showed the outstanding loan balance as of DATE and listed all other charges and costs necessary to pay off the loan. Included as one of the line items was a "Recording Fee" of $23.50. Mellon's Payoff Statement also included a sentence that read: "We will record any Reconveyance/Release where required by law." Intercounty was instructed to pay off the Mellon loan according to the terms of the payoff letter.

At closing, Intercounty prepared and provided Ms. Christakos with a HUD-1 Settlement Statement ("HUD-1") which summarized the transaction and itemized all of Intercounty's settlement charges, including a breakdown of its individual recording fees.[1] The first

---

[1] One of Congress' stated purposes for enacting RESPA was to provide more effective advance disclosure to home buyers and

2

page, entitled "Summary of Borrower's Transaction," is separated into the subparts: (1) Gross Amount Due from Borrower, *i.e.* the total settlement charges plus the amount to pay off the old Mellon mortgage, and (2) Amounts Paid by or on behalf of Borrower, the proceeds of the new loan plus interest. Because the loan proceeds exceeded the amounts owed to Mellon plus the settlement charges incurred, Ms. Christakos received the remaining cash proceeds of $751.79.

The second page of the HUD-1 detailed the settlement charges and included under "Government Recording and Transfer Charges" an amount of $29.00 for "Releases." Intercounty acknowledges that the purpose of this fee was to record the release of the Mellon mortgage. These settlement charges were included in the "Gross Amount Due from Borrower" section and therefore were paid out of the loan proceeds of Ms. Christakos' new loan with New America. However, it was Mellon that actually recorded the release and incurred the associated costs of recording; Intercounty concedes it

---

sellers of settlement costs associated with residential real estate closings. 12 U.S.C. S 2601(b)(1) (1994). RESPA effectuates this purpose by requiring disclosure of settlement costs to the borrower both before and at closing, when the borrower must be provided with a uniform settlement statement. A uniform settlement statement is a standard form developed by HUD that itemizes all of a borrower's charges for settlement. 12 U.S.C. § 2603(a),(b) (1994).

did not record, or attempt to record, the release. After Ms. Christakos instituted this action, Intercounty sent Ms. Christakos a check to reimburse her for the $29 settlement charge.

## II. Class Certification

In evaluating a motion for class certification, I take the allegations made in support of certification as true, *Hardin v. Harshbarger*, 814 F.Supp. 703, 706 (N.D. Ill. 1993), and as a general matter, do not examine the merits of the case, *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). However, the "boundary between a class determination and the merits may not always be easily discernible," *id.* at 599, because determining the propriety of class certification generally depends on factors "'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,'" *id.* at 598 (quoting General Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)).

To certify a class under Rule 23, a plaintiff must satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993), and one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). The plaintiff bears the burden of showing

that the proposed class meets the requirements for certification. *Retired Chicago Police Ass'n*, 7 F.3d at 596. Ms. Christakos seeks certification under Rule 23(b)(3) and seeks to certify a class consisting of "all persons upon whom Intercounty imposed duplicative or bogus governmental fees on or after December 22, 1998." The defendant challenges only some of the Rule 23(a) requirements. Intercounty objects to certification on the grounds that: (1) the proposed class is too vaguely defined, (2) Ms. Christakos is not an adequate representative because her claims are atypical, and (3) numerosity has not been sufficiently shown.

A.

Although Federal Rule of Civil Procedure 23(a) does not expressly require that a class be "definite" in order to be certified, a requirement that there be an identifiable class has been implied by courts. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977); *NOW v. Scheidler*, 172 F.R.D. 351, 357 (N.D. Ill. 1997). An identifiable class exists if its members can be ascertained by reference to objective criteria and may be defined by reference to the defendants' conduct. *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 328 (N.D. Ill. 1995) (citations omitted). I agree that the labels "duplicative" and

5

"bogus" are not instructive or sufficiently clear to identify the class.[2] Ms. Christakos also offers a more narrow class alternative: those "upon whom Intercounty imposed a charge on or after December 22, 1998 for recording the release, whom a mortgage company also charged a fee for recording the release and for whom Intercounty never recorded the release." This is an improvement, but Ms. Christakos alleges violations of RESPA and the ICFA so must narrow the class to those who were allegedly injured as a result of a violation of these statutes. RESPA is only implicated for federally related mortgages and, as explained in Part III of this opinion, for the ICFA to be implicated, some type of disclosure upon which the borrower relied is necessary. The identifiable class is therefore properly narrowed to those persons: (1) for whom Intercounty acted as settlement agent, (2) on whom Intercounty imposed a charge for recording a release on or after December 22, 1998, (3) to whom Intercounty disclosed that it was charging such a fee to record the release, (e.g. in a HUD-1 or similar disclosure statement), (4) for whom Intercounty did not record the release, and (5) whom a mortgage company or other agent also charged a fee

---

[2] I indicated that this definition was too broad and permitted limited class discovery to determine whether a suitable class existed.

6

for actually recording the release.

B.

Intercounty claims that its standard business practice is to give the borrower a form transmittal letter which directs the old lender to send the release deed to Intercounty to be recorded; the borrower is then to give this letter to their old lender. Intercounty claims that Ms. Christakos did not execute this letter directing her old lender to send the release deed to Intercounty so that it could record it. Therefore, Intercounty claims that Ms. Christakos' claim is atypical and that because it would have a defense in her case, she is precluded from being an adequate class representative. However, this is a contested, factual argument that goes to the merits of her claim, which is not so obvious so as not to warrant further investigation, so I cannot yet consider it.[3] In any event, a defense specific to the named representative defeats class certification only if it is "likely to usurp a significant portion of the litigant's time and energy." *Roezma v. The Marshfield Clinic*, 174 F.R.D. 425, 440 (W.D. Wis. 1997). The issue of predominance is "whether proposed classes are sufficiently

---

[3] Moreover, even if I could, Intercounty seems to have assumed the risk by placing the onus on borrowers to send letters that it presumably could have sent directly.

cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. This defense raised by Intercounty is not complicated, or one which will require much time or resources so as to detract from the class; in fact, the same factual scenario may well be present in the case of most of the plaintiffs. Based on the facts alleged by Ms. Christakos, her class claims predominate over any individual issues and permit her to be an adequate class representative. Accordingly, I find that the proposed class will be sufficiently cohesive with Ms. Christakos as its representative.

With respect to the element of numerosity, certification is only appropriate where the class is so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). This requires some evidence or reasonable estimate of the number of class members, but a good faith estimate is sufficient when the precise number of class members cannot be determined. *Buycks-Roberson*, 162 F.R.D. at 329. During the additional discovery period, plaintiff's counsel reviewed one hundred files. In seventeen of these, there was no recording release fee charged. Twenty-eight files did not contain the transmittal letter when Intercounty charged a recording release fee despite being contained on Intercounty's computer system.

One conclusion that could be drawn is that the borrowers did not execute these forms as anticipated by Intercounty. Another is that the old bank followed its own policy and recorded the release itself. I would like to know who recorded the releases in the one hundred files sampled and who was paid to record them. Nonetheless, I may make common sense assumptions to determine numerosity, *Patrykus v. Gomilla,* 121 F.R.D. 357, 360 (N.D. Ill. 1988), and here I can assume that numerosity is met. In its papers filed with this court, Intercounty states that it "acts as settlement agents in tens of thousands of real estate closings each year." Ms. Christakos has provided an affidavit by a Mellon officer that it is Mellon's standard practice to record its own releases. Ms. Christakos also claims that other institutions with whom Intercounty does business follow the same practice. It is not unreasonable to assume that of the tens of thousands of transactions processed by Intercounty, at least forty have been with banks like Mellon whose practice it is to record the release.

The defendants do not dispute that Ms. Christakos' claim involves elements of law and fact which are common to the class, as they involve the same alleged business practice. The showing for a Rule 23(b)(3) certification is that: (1) common issues of law and fact predominate and (2) a class action is superior to other forms

of adjudication. *Warnell v. Ford Motor Co.*, 189 F.R.D. 383, 386 (N.D. Ill. 1999). Moreover, this is a classic Rule 23(b)(3) class, with small or statutory damages brought by plaintiffs who allege similar mistreatment by a comparatively powerful defendant, one that, if the facts alleged were proved, otherwise might get away with piecemeal highway robbery by committing many small violations that were not worth the time and effort of individual plaintiffs to redress or were beyond their ability or resources to remedy. *See In the Matter of American Reserve Corp.*, 840 F.2d 487, 489 (7th Cir. 1988) ("[C]lass actions aggregate claims and permit both compensation and deterrence that are otherwise impossible."). I therefore hold that Ms. Christakos has met the Rule 23 requirements for class certification.

## III. Dispositive Motions

In order to have a claim dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the moving party must meet a high standard. On a motion to dismiss, I regard all of the well-pleaded factual allegations in the complaint as true, construe them in the light most favorable to the plaintiffs, and draw all reasonable inferences on the plaintiffs' behalf. *See Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 468 (7th Cir. 1997). Dismissal is proper

only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A.  RESPA Claim

In Count I, Ms. Christakos alleges that Intercounty violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c). RESPA permits the payment of fees during the real estate settlement process only to persons and entities who actually render services or provide goods to the consumer. 12 U.S.C. § 2607(c)(2); *see also* 24 C.F.R. § 3500.14(g)(iii). Fundamentally, "RESPA is an anti-kickback statute." *Mercado v. Calumet Fed. Sav. & Loan Ass'n*, 763 F.2d 269, 270-71 (7th Cir. 1985). In accordance with its broad purpose, 12 U.S.C. § 2607(b) provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." The implementing regulations add that "[a] charge by a person for which no or nominal services are performed or of which duplicative fees are charged is an unearned fee and violates this section." 24 CFR §

3500.14(c). RESPA goes on to provide treble damages for parties injured by violations of the statute. 12 U.S.C. § 2607(d)(2).

Intercounty contends that § 2607(b) is not implicated because it did not "split" the $29 charge it imposed on Ms. Christakos as part of the settlement charges with anyone nor did it "kick back" any fees to parties who did nothing in return for the money received. Narrowly construed, this is true, but Intercounty misses the point. Ms. Christakos alleges that Intercounty itself is the party who received a split of the fee while doing nothing in return for its unearned $29. Intercounty compares this to the "windfall" it received in *Durr v. Intercounty Title Co. of Illinois*, 14 F.3d 1183, 1187 (7th Cir. 1993), which the Seventh Circuit found did not trigger § 2607(b) because the overpayment was not shared with anyone but kept by this same defendant. However, this is not what Ms. Christakos alleges. Ms. Christakos claims that she paid $52.50 for the settlement charge to record the release, $23.50 of which went to Mellon, who actually recorded the release and thus earned the fee, and $29 of which went to Intercounty, who did nothing in return. These payments were made from the same pool of funds from the loan proceeds over which Intercounty, as settlement agent, had control and directed payments made from. Therefore, Intercounty received an unearned "portion" of a settlement fee that was

unearned, in violation of 2607(b).

Intercounty next argues that the fee was not unearned because it had every intention of performing the settlement service. A fee is earned not when it is received but when the service for which it is paid is actually performed. At closing, the recording fee paid by Ms. Christakos was a prepaid unearned fee which would have been earned when Intercounty actually recorded the release. Moreover, Intercounty claims it did not discover until January 20, 2000 that Mellon had recorded the release, at which time it returned the plaintiff's money. Ms. Christakos' refinancing closed on December 30, 1998. Sufficient time had passed for Intercounty to record the release -- thereby earning its fee -- or discover it had already been done and return Ms. Christakos' money. Intercounty also raises issues of custom and industry practice regarding which party in a refinancing performs what functions, but these are questions of fact inappropriate for purposes of this motion.

The weight of Seventh Circuit case law requires payment to a third party to trigger 2607(b).[4] *See, e.g., Mercado v. Calumet Federal Savings & Loan Association*, 763 F.2d 269, 270 (7th Cir.

---

[4] To the extent Ms. Christakos argues to the contrary, that any unearned fee violated RESPA, she is wrong and her argument rejected.

13

1985)("The statute requires at least two parties to share fees"); *Durr v. Intercounty Title Co. of Illinois*, 14 F.3d 1183, 1187 (7th Cir. 1993)(if the complaint does not allege a payment to a third person, the plaintiff has failed to state a claim under RESPA."); *but see U.S. v. Gannon*, 684 F.2d 433 (7th Cir. 1981). However, the difference between the cases cited by Intercounty and this case is that Ms. Christakos does allege that the fees were split with a third party, Mellon Bank. *Durr*, 14 F.3d at 1187 ("In this case, as in *Mercado*, the plaintiff failed to allege that Intercounty's overcharge was in the nature of a 'portion, split, or percentage of any charge' given to a third party"). Mellon may have unwittingly "shared" this fee with Intercounty, but the charge to Ms. Christakos for recording the release of the Mellon mortgage was $52.50, of which Intercounty received $29 in return for no "services actually performed." This $52.50 was paid out of a common fund, the New America loan proceeds, as directed by Intercounty, the settlement agent. In addition, the defendants in the above cases actually performed the settlement services for which they overcharged the plaintiffs. Intercounty does not deny that it did not record the release; thus, the charge was completely unearned.

Although this is not the typical kickback situation envisioned

by RESPA's drafters, the plain language of the statute and regulations are broad enough to cover a situation where a borrower pays two amounts to two parties for the exact same service, one of whom performs the service, and one of whom receives the unearned fee while providing no service whatsoever.

B. <u>Illinois Consumer Fraud Act Claim</u>

Intercounty claims that Ms. Christakos cannot state a claim under the ICFA, "a regulatory and remedial statute intended to protect consumers, borrowers and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Cripe v. Leiter*, 184 Ill.2d 185, 190-91 (1998). Section 2 of the Illinois Consumer Fraud and Deceptive Practices Act prohibits the use of unfair or deceptive practices by use of misrepresentation, fraud or the concealment of a material fact with the intent that others rely on the deception. 815 ILCS 505/2. To bring a claim under the ICFA, a plaintiff must set forth: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving a trade or commerce; and (4) that the consumer fraud proximately caused the plaintiff's injury. *See Anderson v. Rizza Chevrolet,*

15

*Inc.*, 9 F.Supp.2d 908, 915 (N.D. Ill. 1998). Despite the specificity requirement of pleading fraud, we have a notice pleading system, where "a suit should not be dismissed so long as it is possible to hypothesize facts, consistent with the complaint, that would make out a claim for relief." *Petri v. Gatlin*, 997 F.Supp. 956 (N.D. Ill. 1997)(refusing to dismiss an ICFA claim where plaintiffs generally alleged that defendants disseminated brochures with false information, approved the content of the brochures, and knew the content was false).

The parties dispute the presence of two of these elements. Ms. Christakos claims that Intercounty committed a deceptive act or practice by violating RESPA and by charging a fee for recording a release it never recorded. That Intercounty intended Ms. Christakos to rely on its deception could easily be inferred from the contents on the face of the HUD-1, where it misrepresented that the $29 fee was for recording the release, which the plaintiff relied upon for accurate information and to allocate the proceeds from her new loan. Moreover, Ms. Christakos alleges that the fact that Intercounty did not seek to record the release until after this lawsuit was filed is further evidence of its intent not to do so and for both the plaintiff and New America to rely on its

16

representation in the HUD-1. Essentially, Ms. Christakos' theory is that Intercounty misrepresented that it would incur a recording cost so that she would pay them for this cost.

Intercounty claims that it fully disclosed, in accordance with HUD regulations, the amount of the recording fee it anticipated. Basically, Intercounty claims that it intended at the time of the disclosure to incur the fee, so the statement was true when made. The plaintiffs deny this, and intent is a question of fact not appropriate in a motion to dismiss. Had Intercounty deliberately charged Ms. Christakos for a service that it had no intent to provide or knew was unnecessary because Mellon would record the release, this could constitute a violation under the ICFA. Based on the contents of the payoff statement provided by Mellon, in accordance with which Intercounty received and paid out the funds, it is conceivable that Intercounty was aware that Mellon, not Intercounty, would incur the cost to record the release. Significant also is the fact that Intercounty either never sought to record the release or did not return the plaintiff's $29 until after this case was filed. Intercounty's inclusion of the recording fee as part of its settlement charges which were paid out of Ms. Christakos' loan proceeds was sufficient to induce the plaintiff's reliance.

IV.

Based on the foregoing, Ms. Christakos' motion for class certification is GRANTED, as modified, and Intercounty's motion to dismiss is DENIED.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: 8/25, 2000