Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8334 | **DATE** | 2/15/2001 |
| **CASE TITLE** | Antigone Christakos vs. Intercounty Title Company, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Motion of defendant Fidelity National Title Insurance Company of New York to dismiss plaintiff's Second Amended Complaint [55] is granted without prejudice. Plaintiff is permitted to amend the Second Amended Complaint by 3/8/01. Status hearing is set for 3/26/01 at 9:30 a.m.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | FEB 16 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 64 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MD | courtroom deputy's initials | 01 FEB 15 PH 5:41 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

ANTIGONE CHRISTAKOS,           )
                               )
    Plaintiff,                 )
                               )
v.                             )    Case No. 99 C 8334
                               )
INTERCOUNTY TITLE COMPANY,     )
FIDELITY NATIONAL TITLE INSURANCE  )
COMPANY OF NEW YORK            )    FEB 16 2001
                               )
    Defendants.                )

FEB 16 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Antigone Christakos ("Christakos") filed a class action complaint against Intercounty Title Company ("Intercounty") for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b) (Count I), and the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count II) alleging that Intercounty imposed duplicative governmental recording fees upon the plaintiff and the class in connection with residential real estate closing transactions. The class was certified and plaintiff subsequently amended her complaint to add Fidelity National Title Insurance Company of New York ("Fidelity") as a defendant, asserting that Fidelity is liable to plaintiff and the class for Intercounty's violations. Fidelity now moves to dismiss plaintiff's complaint. For the reasons set forth herein, the court grant's Fidelity's motion without prejudice.

### BACKGROUND

The facts underlying this class action complaint are fully set forth in Judge Bucklo's

1

decision certifying the class. *See Christakos* v. *Intercounty Title Co.*, 196 F.R.D. 496 (N.D. Ill. 2000). For purposes of the Second Amended Complaint, the following additional facts are alleged. Plaintiff alleges that on September 14, 1995, Fidelity executed a reinsurance agreement with Intercounty. The reinsurance agreement provided Fidelity would indemnify customers against loss in connection with escrow closing activity. Intercounty's violations of RESPA were committed in connection with the closing of residential real estate transactions and amount to misappropriation of funds involved in the escrow accounts. *See* Second Am. Compl. at ¶ 12. Therefore, plaintiff alleges, the loss suffered by plaintiff and the certified class are covered by Fidelity's reinsurance agreement. *Id.* Plaintiff also alleges that on June 23, 2000, Illinois Department of Financial Institutions ("DFI") shut down Intercounty due to gross deficiencies in its escrow funds. On June 26, 2000, the DFI appointed Fidelity as trustee of Intercounty, and Fidelity was charged with assuring the proper distribution of Intercounty's remaining escrow funds, which totaled $13.5 million. Fidelity paid out $35 million to persons who suffered theft of escrowed funds. *Id.* at ¶ 11.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Electric Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 101, 102 (1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999).

In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir.1996).

DISCUSSION[1]

Plaintiff alleges that each count of her Second Amended Complaint is also against Fidelity "pursuant to: (1) [Fidelity's] role as trustee of Intercounty's assets and (2) its independent obligation to indemnify customers against loss in connection with escrow closing activity pursuant to its reinsurance agreement." *See* Second Am. Compl. at ¶¶ 18, 29. Defendant moves to dismiss the Second Amended Complaint arguing that plaintiff has failed to state a claim for relief against Fidelity on either basis.

A.     Reinsurance Agreement Liability

Plaintiff seeks redress against Fidelity pursuant to Fidelity's "independent obligation to indemnify customers against loss in connection with escrow closing activity pursuant to its reinsurance agreement," which Fidelity executed with Intercounty on September 14, 1995. *See id.* at ¶¶ 12, 18, 19. Defendant argues, however, that plaintiff has not stated a claim under the reinsurance agreement because Intercounty is not a party to the reinsurance agreement and/or plaintiff and the class are not third-party beneficiaries of the reinsurance agreement.

---

[1] Both parties rely on Illinois law and thus the court cites to Illinois law herein. *Compare Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.").

3

Alternatively, defendant argues, the reinsurance agreement only reinsures risks under title insurance policies for "loss or damage suffered by liens, encumbrances upon, defects in, or the unmarketability of title" and not claims arising out of any alleged improper charges by Intercounty. *See* Def.'s Mot. to Dismiss at 2.

1.  Parties to the Reinsurance Agreement

A review of the reinsurance agreement, which is not attached to the Second Amended Complaint but which is attached to defendant's motion to dismiss and is made a part of the pleadings,[2] indicates that the reinsurance agreement was executed by Fidelity and Intercounty National Title Insurance Company ("INTIC"), not defendant Intercounty, as alleged by plaintiff. The title of the agreement is: "Automatic Reinsurance Agreement between Intercounty National Title Insurance Company and Fidelity National Title Insurance Company," and the agreement states, in part:

> Intercounty National Title Insurance Company ('INTIC'), a corporation organized and authorized to engage in the business of title insurance under the laws of Illinois ('Ceder'), and Fidelity National Title Insurance Company ('Fidelity'), a corporation organized and authorized to engage in business of title insurance under the laws of the State of New York ('Reinsurer'), do, by this Agreement, establish a reinsurance relationship which shall be governed by the provisions of this Agreement.

The agreement is signed only by INTIC and Fidelity. Nowhere in the sixteen page policy is

---

[2]Because the reinsurance agreement is referred to in plaintiff's Second Amended Complaint and is central to her claim against Fidelity as it allegedly provides the basis of liability against Fidelity, the court considers it in ruling on the motion to dismiss. *Menominee Indian Tribe of Wisconsin* v. *Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.").

4

Intercounty Title Company (defendant in the instant case) mentioned. Thus, Intercounty is not a party to the reinsurance agreement. *See Smith* v. *Clark Equip. Co.*, 483 N.E.2d 1006, 1008 (Ill. App. Ct. 1985) ("Since [defendant] is not a named party and not a signatory to the agreement, it is not a party to the contract."). In an attempt to reconcile this disparity, plaintiff, in her response brief, provides the court with a copy of a complaint filed in federal district court by Fidelity against INTIC, Intercounty Title Company and, others[3] and argues that Fidelity's assertions in that complaint are inconsistent with Fidelity's argument that Intercounty is not a party to the reinsurance agreement. Namely, plaintiff argues that

> Fidelity asserts in its complaint that (1) Intercounty was involved in the negotiations of the reinsurance contract; (2) pursuant to that contract Fidelity issued closing protection letters 'under which Fidelity would indemnify against loss in connection with escrow closing activity'; (3) the money Fidelity seeks to recover is not connected to 'title surprises,' but rather from Intercounty's fraud in connection with escrow closing activity; (4) Fidelity admits that Intercounty is the alter-ego of Intercounty National Title Insurance Co.; and (5) Fidelity raises the possibility that INTIC was Intercounty's agent

and, "At best, Fidelity has raised numerous factual issues that cannot be resolved in a 12(b)(6) motion to dismiss." *See* Pl.'s Response Mem. at 5 and Ex. A thereto. Plaintiff urges this court to read the assertions that she sets forth from Fidelity's complaint as supplementing the allegation in her Second Amended Complaint that Fidelity is liable pursuant to its obligations under the reinsurance contract. *See id.* at 5 and n.1. However, even if Fidelity issued closing protection letters (which apparently contain the language pertaining to an independent obligation to

---

[3]*Fidelity Nat'l Title Ins. Co. of New York* v. *Intercounty Nat'l Title Ins. Co.*, et. al, No 99 C 5658 (Conlon, J.).

5

indemnify customers against loss in connection with escrow closing activity)[4] pursuant to the reinsurance agreement, that does not change the fact that Intercounty is not a party to the reinsurance agreement. And merely because Fidelity asserts an alter-ego or agency relationship between Intercounty and INTIC in a complaint in another case does not cure the defects in plaintiff's Second Amended Complaint, which alleges that the reinsurance agreement was between Fidelity and Intercounty, and does not mention INTIC. Although this court, on a motion to dismiss, "must construe pleadings liberally . . . [and although t]he complaint need not specify the correct legal theory," *Whitehead v. AM Int'l, Inc.*, 860 F. Supp. 1280, 1286 (N.D. Ill. 1994) (internal citations omitted), plaintiff's complaint must nevertheless "state either direct or inferential allegations to establish the necessary elements for recovery under the chosen legal theory." *Id.*; *see also Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1295 (7th Cir. 1989) ("bare bones conclusory allegations" which "fail[] totally to allege the necessary elements of the alleged claims" are insufficient). Because there is no mention of INTIC or the relationship between Intercounty and INTIC in the Second Amended Complaint, there is nothing from which to infer a claim against Fidelity under the reinsurance agreement based on an alter-ego or agency theory,[5] and, therefore, plaintiff's response is merely an attempt to amend the Second Amended

---

[4]The court was unable to find such obligation spelled out in the reinsurance agreement. The court assumes that this language is contained in the closing protection letters, which are mentioned for the first time in plaintiff's response brief. However, neither party has provided the court a copy of a closing protection letter.

[5]There are two requirements to prevail on an alter-ego claim in Illinois: (1) "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," which requires plaintiff to show the "degree of control by the parent" and; (2) "circumstances must be such that adherence to the fiction of separate corporate existence would

6

Complaint by way of her response brief, which the Seventh Circuit has not condoned. *See Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989); *see also Jones v. Sabis Educ. Sys., Inc.*, 1999 WL 1206955, *3 (N.D. Ill. Dec. 13, 1999) (in explaining difference between supplementing and amending a claim, court stated "In his response to the motion to dismiss, a plaintiff may assert additional facts to clarify an existing claim, but he may not amend (that is, correct or alter) his complaint such that he essentially asserts a new claim.").[6]

2. Third Party Beneficiary

Alternatively, plaintiff argues that she and the class are third-party beneficiaries of the reinsurance agreement, that is, they were the intended beneficiaries of INTIC and Fidelity's reinsurance agreement. *See* Pl.'s Response Mem. at 5-7. "Whether a plaintiff is a third-party beneficiary of a contract is a legal conclusion that we need not accept for the purpose of a motion to dismiss." *Choi v. Chase Manhattan Mortgage Co.*, 63 F. Supp. 2d 874, 881 (N.D. Ill. 1999).

---

sanction a fraud or promote injustice." *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 462-63 (7th Cir. 1991). To show an agency relationship, plaintiff must show: "1) the principal has the right to control the manner and method in which the agent performs work for her, and 2) the agent has the power to subject the principal to personal liability." *Peterson v. H & R Block Tax Servs., Inc.*, 971 F. Supp. 1204, 1213 (N.D. Ill. 1997) (applying Illinois law) (finding plaintiff failed to plead facts, which, if proved could establish the existence of an agency relationship).

[6]All of the cases cited by plaintiff for supplementing a complaint by way of a response brief concern the principle that a plaintiff can add facts to defeat a motion to dismiss "if these facts are consistent with the allegations in the complaint." *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 167 F.3d 1170, 1173 n.3 (7th Cir. 1999); *see also Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997); *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 372-73 (7th Cir. 1992); *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). However, as discussed supra, plaintiff's Second Amended Complaint asserted a reinsurance agreement between Fidelity and Intercounty and did not mention INTIC. *See Dawson*, 977 F.2d at 373 ("a plaintiff may not argue . . . that a contract consisted of Y when the complaint alleged that the contract consisted of X").

Where a party is alleging that a contract was made for her benefit, she must show that she was "intended to directly benefit from" the contract. *Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.*, 882 F. Supp. 713, 721 (N.D. Ill. 1995). "Illinois follows the 'intent to benefit' rule; that is, third-party beneficiary status is a matter of divining whether the contracting parties intended to confer a benefit upon a nonparty to their agreement." *Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 334 (7th Cir. 1999) (quoting *XL Disposal Corp. v. John Sexton Contractors Co.*, 659 N.E.2d 1312, 1316 (Ill. 1995)). "[T]here is a strong presumption that parties to a contract intend that the contract's provisions apply to only them and not to third parties." *Id.* (quotation omitted). "Express language in the contract identifying the third-party beneficiary is the best evidence of intent to benefit that party," but intent can also be shown by an implication so strong as to amount to an express declaration. *Id.*; *see also Jackson*, 882 F. Supp. at 721 (the "intentions of the parties to the [agreement] are to be 'gleaned from a consideration of the contract and the circumstances surrounding the parties at the time of the execution'").

In the instant case, the court need go no further than the reinsurance agreement itself, which expresses the intent of the parties *not* to confer third-party beneficiary status on anyone. Here, the reinsurance agreement states "REINSURANCE SOLELY FOR CEDER'S BENEFIT" and "Nothing contained herein shall constitute as between Ceder and Reinsurer . . . a contract for the benefit of a third party . . . ." *See* Reinsurance Agreement, ¶ 6 (Ex. 1 to Def's. Mem. in Support of Mot. to Dismiss). Thus, plaintiff cannot be a third-party beneficiary to this contract. *See Golden v. Barenborg*, 850 F. Supp. 716, 724 (N.D. Ill. 1994) ("The express wording of the contract of sale to extinguish rights in any person not a party to the contract leaves no doubt" that

8

the parties to the contract "did not intend to make [plaintiff] or any other potential buyer a third-party beneficiary of the contract."). Plaintiff's attempt, in her response brief, to argue the parties' intent based on matters outside the reinsurance agreement (namely, from the allegations in the Fidelity's federal complaint), cannot confer third-party beneficiary status where the language of the agreement is clear. *See id.* (holding that plaintiff's allegations that defendant "knew that the intended beneficiary of the warranty was the ultimate purchaser of the residence" were "insufficient to confer third- party beneficiary status" on plaintiff in light of the clear contract language that the contracting parties "only intended to benefit themselves by executing the warranty").[7] Therefore, the court finds that plaintiff has failed to allege a claim against Fidelity under the reinsurance agreement, either as a party to or third-party beneficiary of that reinsurance agreement.[8]

B.  Trustee Liability

The other basis upon which plaintiff alleges liability against Fidelity is Fidelity's "role as trustee of Intercounty's assets." *See* Second Am. Compl. ¶¶ 18, 29. Specifically, plaintiff alleges that after the DFI shut down Intercounty due to gross deficiencies in its escrow funds, DFI

---

[7]The case cited by plaintiff is inapposite because it does not involve an express provision disclaiming intent to confer a benefit on a third party, as here. *See* Pl.'s Response Mem. at 6 (citing *Kemmerer Bottling Group, Inc. v. Sentry Equip. Erectors, Inc.*, 1996 U.S. Dist. LEXIS 12642, *15 (N.D. Ill. Aug. 27, 1996) (Report and Recommendation), *adopted by*, 1997 U.S. Dist. LEXIS 17917 (N.D. Ill. Nov. 6, 1997)).

[8]Because the court does not find plaintiff has alleged a claim under the reinsurance agreement as a party to or third-party beneficiary of the agreement, the court need not address defendant's alternate argument that the reinsurance agreement does not provide the coverage asserted by plaintiff.

9

appointed Fidelity as trustee of Intercounty, and charged Fidelity "with assuring the proper distribution of Intercounty's remaining escrow funds." *Id.* at ¶ 11. Defendant argues that plaintiff has failed to state a claim against Fidelity as a trustee because Fidelity was not appointed trustee of Intercounty but rather trustee of INTIC, and, even if Fidelity could be considered a trustee of Intercounty's funds, the funds held in escrow are not subject to debts of the escrowee under the Title Insurance Act, and in any event, trustees are only liable for their own breach of trust and plaintiff has not alleged any breach of trust on the part of Fidelity. *See* Def.'s Mot. to Dismiss, at 2, Br. in Support at 6-7, Def.'s Reply at 10. In her response brief, plaintiff contends that "[w]hether the document appointing Fidelity is silent on Intercounty is not controlling" because pursuant to Fidelity's appointment, Fidelity "controlled $15 million dollars of Intercounty's assets, not INTIC's assets" and "[t]hese assets should have been held in trust for plaintiff and the class." Pl.'s Response Mem. at 8 (citing *NPF WL, Inc. v. Sotka*, 2000 WL 574527, *9 (N.D. Ill. May 10, 2000) (holding that "once a corporation becomes insolvent, the corporate assets are treated as being held in a trust fund for the purpose of satisfying claims of creditors. . . .")). Further, plaintiff alleges that "Fidelity depleted funds held in trust for its own gain at the expense of plaintiff and the class. Thus, Fidelity violated its duty when it put its interests in conflict with beneficiaries." *Id.*

Defendant correctly notes that the order appointing Fidelity as trustee[9] makes Fidelity the trustee of INTIC. However, the order also mentions Intercounty Title Company accounts:

---

[9]Like the reinsurance agreement, the court considers the Order of Appointment of Trustee attached to defendant's motion to dismiss as part of the pleadings because the trust appointment is referred to and central to plaintiff's claim of liability against Fidelity.

10

> [Fidelity is] appointed Trustee of [Intercounty National Title Insurance Company] with authority to assure the proper disbursement and distribution of all escrowed funds held by [Intercounty National Title Insurance Company] or its agents, including such funds held in Harris Bank 'Intercounty Title Company Master Escrow Account #300-615-2' and 'Intercounty Title Company Escrow Disbursement Account #300-621-0'; and to issue and process title policies for which [Intercounty National Title Insurance Company] and its agents received payment prior to 5 pm. June 23, 2000.

Def.'s Br. in Support of Mot. to Dismiss, Ex. 2. Even construing the order as making Fidelity a trustee over Intercounty's funds, however, does not go far in benefitting plaintiff. Plaintiff's meager allegations in the Second Amended Complaint are insufficient to state a claim against Fidelity for entitlement to those funds. A trustee may be liable to a beneficiary for a loss or depreciation in value of the trust property resulting from a breach of trust. *See* Restatement (Second) of Trusts § 204 (1959). A breach of trust is a "violation by the trustee of any duty which, as trustee, he owes to the beneficiary." *In re Consupak, Inc.*, 87 B.R. 529, 541 (Bankr. N.D. Ill. 1988) (citing Restatement (Second) of Trusts § 201 (1959)). Even liberally construed, the allegation that the claim is against Fidelity pursuant to "its role as trustee of Intercounty's assets" and that Fidelity has a duty to assure proper distribution of the Intercounty's funds, cannot be read to infer a *breach* of that duty. And this court cannot accept plaintiff's attempt to amend her pleadings by way of asserting a breach of duty in her response brief. Indeed, in the case cited by plaintiff, *NPF WL, Inc. v. Sotka*, the *complaint* alleged that defendants *breached a duty* to plaintiff by dissipating assets. 2000 WL 574527 at *9 (emphasis added). Therefore, the court finds that plaintiff has failed to allege a claim against Fidelity as trustee of Intercounty's funds.[10]

---

[10]Also, even if plaintiff had properly alleged a breach of trust, it is not clear that plaintiff has a claim to these escrow funds. As pointed out by defendant, the Title Insurance Act states:

11

## CONCLUSION

For the reasons explained above, the court grants Fidelity's motion to dismiss the plaintiff's Second Amended Complaint without prejudice. Plaintiff is permitted to amend the Second Amended Complaint by March 8, 2001.

ENTER: _____
United States District Judge

Date: February 15, 2001

---

Funds deposited in connection with any escrow, settlement, or closing shall be deposited in a separate fiduciary trust account or accounts in a bank or other financial institution insured by an agency of the federal government unless the instructions provide otherwise. Such funds shall be the property of the person or persons entitled thereto under the provisions of the escrow, settlement, or closing and shall be segregated by escrow, settlement or closing in the records of the independent escrowee. <u>Such funds</u> shall not be subject to any debts of the escrowee and <u>shall be used only in accordance with the terms of the individual escrow</u>, settlement or closing under which the funds were accepted.

Title Insurance Act, 215 ILCS 155/17(e)(1) (current through July 7, 2000) (emphasis added).